May it please the court, my name is Robert Tyler. I am attorney for Mr. Mackey. I would like to reserve three minutes for rebuttal if that would be possible. Today, we have a case here that ultimately comes down to Officer Meyer's personal knowledge of facts at the moment of Mr. Mackey's arrest. We contend that at a minimum, there is a genuine issue of material fact as to Officer Meyer's actual knowledge underlying the district court's finding of probable cause. And we contend that the record and Officer Meyer's declaration is entirely lacking sufficient evidence to support a finding that Officer Meyer actually knew at the moment of the warrantless misdemeanor arrest that a crime was occurring in his presence. So under the Fourth Amendment, probable cause, we don't look to what the state law requires? Yes, Your Honor. However... So why is presence, you know, whether it happened in his presence? For purposes of the Federal Constitution. Different when you get to state law, there's a different test. Your Honor, I believe that the case law articulates that in the Federal arena, that when you have a minor offense, that the officer has to have personally observed the offense before arresting the individual. That it is not something where the officer... What's the U.S. Supreme Court case that says that? Or a Ninth Circuit case that says that? Your Honor, I... I believe and I will reference this case and may need to go back and take a look at that again. But I believe that the Henry versus U.S. case 361 U.S. 98, I believe that would be a case that would support the fact that a crime would need to occur in the presence of the police officer. In other words, under the Fourth Amendment, you could not, in order to have probable cause, you have to see the crime unfold. For a minor offense. For a minor offense. That's what that case says? Your Honor, I apologize. I cannot remember specifically which case that I recall reading in regard to that. But I remember the case that the U.S. Supreme Court was addressing in relation to minor offenses that the officer had to have actual knowledge. And I will concede that even if an officer does not have to personally see the crime, the officer has to have actual knowledge that a crime has occurred. If... Well, he has to have probable cause to believe that a crime has occurred. And that doesn't necessarily require that the officer be present. All right. Let's put aside that issue then and tell us this. What was lacking in the probable cause showing on which the officer acted? In other words, why was there not probable cause? Putting aside the requirement of whether or not he had to be present when it happened.  Thank you, Your Honor. When looking at the audio evidence, the video evidence, and the officer's testimony, his, I should say, his declaration, as well as his own police report. When looking at those things, the facts that Officer Meyer can testify to what he had knowledge of was there was a... He was called because there was, quote, a preacher that is outside harassing customers. He showed up to the DMV. There was a line of people. He heard religious content being read. He asked two questions of a security guard within a 28-second period from the time he arrived to the time he actually handcuffed Mr. Mackey. The two questions were, which one? The guy with the book? Second question, tell him to leave. He asked that question of whom? He asked that question of the security guard. Officer Meyer then immediately walked directly over to Mr. Mackey from an angle and slightly behind, without Mr. Mackey even being able to see him, takes the Bible and says, you are under arrest, immediately places him under arrest, and never questions Mr. Mackey whether he had a permit. All right, now, what's the requirement of a probable cause? Your Honor, there's... What has to be shown in order to show probable cause? In this particular case, the probable cause would have to be shown either under California Penal Code 602.1b or under the regulation 1860. So if we first take the regulation 1860, that is a situation, the element of the crime is the lack of a permit and there be a demonstration or gathering. In this case, Mr. Officer Meyer's entire basis for believing, according to the briefing, that Mr. Mackey lacked a permit, was the fact that on December 24, 2009, more than 12 months earlier, Officer Meyer had gone to the same DMV and had come across, quote unquote, a group of people who were engaging in some sort of religious speech, more than 12 months earlier. And in that instance, Officer Meyer now uses that to say that it's my belief that they didn't have a permit then, more than 12 months earlier, and they must not have a permit now. When you say they, was it the same group of people? We don't know for sure, Your Honor. One of them was the same, right, this guy Coronado. Mr. Coronado was the same and I will say that Mr. Mackey also was there on December 24. However, what had happened on December 24 was Mr. Mackey had left and sometime thereafter, Officer Meyer had arrived on December 24, 2009, and had a short conversation with Mr. Coronado. So when Meyer arrived, Mackey wasn't there 12 months earlier? That's correct. All right, so your point is that the only evidence in the record that the officer could have relied on, on the permit requirement, right, probable cause that there was no permit was this prior incident, right? Yes. So just a minute, and you're saying the fact that there was another incident over a year ago in which there was no permit is not enough to give rise to probable cause that there was no permit in this situation. Is that your argument? Yes, absolutely, Your Honor. Are you contesting the other element? Yes, and may I add one last thing to the 1860? The other contention of our opposition is that, well, and the district court relied on this, the mere fact that the CHP was called to come to the CHP gave Officer Meyer the reasonable probable cause to believe that no permit existed. However, Officer Meyer was called to the CHP because there was a man harassing customers. What do you mean by that? Was that the communication he said he received? Yes, the communication. Customers being harassed or something like that? Exactly, that was the dispatch call. Quote, a preacher that is outside harassing customers waiting in line. All right. And therefore, when the officer arrives, he's not informed that there is a preacher outside harassing who doesn't have a permit or there is someone there without a permit, even if Mr. Mackey had a permit. Somebody told the officer that the preacher doesn't have a permit? No, no one told the officer that. You just mentioned that, that he doesn't have a permit. Where did that come from? I was just saying that nobody said that. No one told Officer Meyer that he didn't have a permit. Go ahead. And all he understood when he arrived was that there was a preacher outside harassing customers. And the point is this. He wound up arresting him under 602.1b by equating the words harassing with the words obstructing. And it was only later that prosecutors decided, no, it should be an 1860 violation for failure to have a permit. But on the day in question, there was no discussion between the security guard or the dispatcher and Meyer about failure to have a permit. That's absolutely correct. Did he ask anybody if they had a permit once he got to the scene? No one. And it's all on video. It's all audio recorded. It is all there. And the only thing that Officer Meyer comes and he questions the security guard, is this the man with the book? Did you ask him to leave? And then he comes and immediately arrests Mr. Mackey. Now, I would suggest that there may have been enough for Officer Meyer to detain Mr. Mackey to investigate and question, do you have a permit? But he didn't do that. Instead, he jumped immediately to the arrest. And when asked why he was being arrested, Officer Meyer responded with, you can't preach to a captive audience. This is a captive audience. You can't preach to a captive audience. He repeated this more than 13 times over about 50 minutes. Never once. Is there, by the way, is there such a penal code provision about preaching to a captive audience? I never found one, Your Honor. I never found one. What about passing on to the state law claim? Well, let me just point you to that. How about 602? Yes, 602. Yeah, probable cause to arrest under 602. And we contend absolutely not. There's a material question of fact that the district court should have allowed this at a minimum to go to trial because the record is completely lacking. It actually, all of the evidence, actual evidence, contradicts Officer Meyer's declaration. The audio evidence, the video evidence, Officer Meyer suggests that there's interference with a business. It's not open, by the way, which is required under the code. It's not open. Is it required under the code that it be open at the moment, or is it enough that it's the kind of business that is normally open to the public? Also the kind of business where people have to wait in line hours before it opens in order to get in. And when we say, actually, Your Honors, when I say a business, it's actually Section 602.1B addresses government offices. I made a mistake in my brief, and I apologize. But it still uses the words open to the public. Yes, open to the public. And in this instance, it was closed. However, not only that, if we take a look at the audio, video testimony, you will see that there was no interference through obstruction or intimidation. It couldn't hardly be said that. Otherwise, our free speech clause in the United States Constitution would seem to be meaningless. Further, the testimony, the depositions that were provided to the court from the security guard himself says over and over that there was no interference, no obstruction, no intimidation. Also, a gentleman named Mr. Toll, his declaration also completely contradicts the officer's testimony. So at the least, at the least, that part of the requirement of the statute is whether it was met as controverted. There's testimony that says it was not violated, right? Absolutely, Your Honor. Now, what about – there's another part of that statute, right? Besides one is you have to obstruct or something like that. Is that right? Yeah, it's interference through obstruction or intimidation. And I can hardly find it to be reasonable to think that someone standing 50 feet away from the front doors of the DMV and 20 feet away from people waiting in line – granted, it might be annoying. Was there any testimony by the officer on the intimidation? In his police report, which if you read, you will see it is so fabricated with facts that are false in comparison to the actual video and the audio and the testimony from the other witnesses at the scene, that you will see it's hardly credible. And at a minimum, this is an instance where the court should have found that there's a genuine issue of material fact. Let me ask you this. What about qualified immunity? I mean, this statute has never been interpreted by the California courts. Your Honor, I see I have 24 seconds left. Go ahead. Just answer the questions. It's an interesting case. Thank you, Your Honor. And I appreciate having the opportunity. Your Honor, the import of this case is about probable cause, not so much about the statutes. Because the import of the case is whether or not there's – whether or not there's reasonable – whether or not the officer acted unreasonably reasonable. In other words, he may have been – he may not have had probable cause, but given the text of the statute, he may have thought under the circumstances that he could be okay to arrest these folks. Your Honor, my question would then be why did he have to lie in his police report to justify his arrest? His police report is so full of fabrications. When you compare the police report to what actually happened to the DMV's witness and security guard. Is that a factor to be considered on whether or not he's entitled to qualified immunity? I believe it goes entirely to his credibility because when looking at probable cause, you must look at all of the objective facts in the officer's mind at the time. And in this instance, the officer's mind can only be established based upon credible evidence. And it was – Well, the question would be, you know, normally you try to decide qualified immunity early in a case. But sometimes you have a discovery and sometimes you have trial. And what you're – I think what you're suggesting is that how can we conclude that any objectively reasonable police officer would have acted in the way he did, even if – irrespective of the particular terms of these particular statutes, in view of the fact that you've got this dash cam and other testimony that totally contradict everything relevant that this officer has said in his police reports and in his declarations, which are mostly conclusory anyway. So you've got to have a trial. Thank you, Your Honor. On qualified immunity as well as on probable cause and false arrest. Is that a fair summary of your argument? Thank you, Your Honor. You said it so much better than me. I'll give you one minute now to address the state law claims, if you wish. You don't have to. Yes, Your Honor, just briefly. And I apologize if I'm in error on that issue in regard to having to be present. But that is clearly the law in California. Whether an offense has been committed in an officer's presence is determined whether the officer can testify to actual knowledge to every element of the claim. That's people versus garrison. And this is an instance where I think I could conclude with Officer Meyer could not with his own senses testify that there was a lack of a permit. So your position on the state law, at least one position is one, because there's no doubt that the purported offense was not committed in the officer's presence. Under state law, he had no right to make a misdemeanor arrest, right? So it would amount to a false arrest? Yes, Your Honor, that's correct. All right. Okay. Thank you very much. We'll hear from the state. May I have a minute for rebuttal? Yes, I'll give you a minute for rebuttal. Thank you. Yes. Good morning, Your Honors. I am Deputy Attorney General Molly Murphy, representing the appellee, Officer Darren Meyer. For starters, I wanted to respond to a question posed by the court regarding whether there is a requirement for a misdemeanor occurring in the officer's presence under the Fourth Amendment. And the Ninth Circuit did resolve that issue in 1990. The case is Barry v. Fowler. Barry? Yeah. B-A-R-R-Y. What did we say? You said the requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment. And that's cited as 902 F. 2nd. 770. Okay. Putting aside the issue of presence, was there probable cause here under either of these two statutes? Yes, Your Honor, there was. First of all, Section 602.1b, which precludes the intentional interference of lawful business of a public agency or those attempting to carry on business there by those who refused to leave when asked. Mr. Mackey's conduct, which Officer Meyer observed, was intentionally interfering with the line of people waiting to go into the DMV. How was he interfering? Well, for one thing, the CHP dispatcher had told Officer Meyer there was a preacher outside harassing customers. All right. But he got there. Right. That's not what he saw, is it? No, he saw Mr. Mackey yelling at the line of people. Yelling? Yes. It was very loud. And the people had no choice other than to listen to him if they were to stay. But does that yelling amount to interfering? Yes. Is that what the law is under the Penal Code? Well, that would be a question for qualified immunity, certainly, because these people at the DMV had no choice but to stay there and listen to this yelling, this judgmental scripturing. I know if they were a captive audience. Yes, because they have to comply with their ---- What makes that a crime, to preach to a captive audience? Because he was interfering with the people attempting to carry on business at the DMV. In the form of interference. Yes, yes. And intimidation is also in the statute. It's intimidating. How did he intimidate? Well, it's intimidating for the people who can't leave if they're going to comply with their ---- Have to listen to it. Right. They might believe they're going to hell. They very well might. And there was a deposition testimony from one DMV patron who said he heard people in line expressing dismay, and he personally was offended and felt forced into listening to it. A lot of people are dismayed and offended by a lot of public speech, and that's what the First Amendment is all about. Yes, Your Honor, but the DMV is not a public forum, so they have a right to a reasonable time, place, and manner restrictions. This DMV had had trouble with this Calvary Chapel group in the past actually inciting people in the DMV line. There had been argument back and forth. Customers had complained. Mr. Meyer knew all of this? He knew all of this from previous discussions with other CHP officers. This group was very distinctive and memorable to both the DMV and the CHP. They always videotaped events. Speaking of videotapes, doesn't the video and audio that was captured on the dash cam pretty much undercut almost everything that the officer said in his deposition, in his declarations? It's peaceful. There's no obstruction. There's no intimidation. Well, first of all, Mr. Mackey's video didn't show everything that was happening at the scene. There were people at the scene who did feel that Mr. Mackey was obstructive, including the DMV patron who indicated he'd heard people complaining about it. There actually was applause from the line when Officer Meyer arrested this gentleman, which wasn't captured on the video. So the video didn't capture everything that happened at the DMV that day. I don't know if either of you cited the Supreme Court case by Justice Scalia called Scott v. Harris in 2007, which said in similar situations, if we've got a videotape, a picture's worth a thousand words. Evidence in the record captured the events. There's no indication it was doctored or altered in any way. It contradicts the version of the story told by the respondent and adopted by the Court of Appeals. And this was a case of excessive force in violation of the Fourth Amendment. And I think it was, I can't recall whether it's a qualified immunity case or not. But, you know, when you've got a video that captures a lot of what happened, and again, I'm not saying the facts here are the same, but Justice Scalia, in his inimitable way, said the Court of Appeals should not have relied on such visible fiction. It should have viewed the facts in the light depicted in the videotape. And there's a lot of what seems to me to be conclusions, speculation, and fiction in what Officer Meyer said and what he's filed. Well, Your Honor, Mr. Mackey's video is only a small piece of the picture. There were other available facts that were available to Officer Meyer at the time he arrived at the scene. For probable cause purposes, Officer Meyer had knowledge of reasonably trustworthy information sufficient to lead a person of reasonable caution to believe, for one thing, Mr. Mackey was violating the permit law, Section 1860. All right. Now the defendant, who was that, CHP Officer Meyer, is also now depending on this regulation, right, that there was a violation of the regulation? Now, when was that assertion first made that, you know, there was probable cause for the arrest because of the regulatory violation? Well, it would have been after the lawsuit was filed. You know, we weren't disputing that. Wasn't he prosecuted? Yes, he was. Was he prosecuted for the regulation? For the regulation, not for the 602.1. So it's the DA or the attorney who said, ah, not the 608 or whatever it was, but this other one. Correct. Better if it's what happened here. Mr. Mackey was prosecuted, criminally prosecuted, for violating the permit regulation, Section 1860A. The U.S. Supreme Court has held under the Devenbeck case that the op- It's an objective analysis. Correct. Would the available facts objectively have shown this officer that there was reasonable cause to arrest for a permit violation? Now, are you arguing, first, there was reasonable cause to make an arrest under the regulation? Yes. Yes, Your Honor. The available facts clearly show that there was no permit. Now, Mr. Mackey's video does not show the history between his Calvary Chapel preaching group and the CHP and the DMV. The DMV had called for Mr. Mackey's removal. The CHP was the permit-issuing entity. And when it issued a permit, it sent a copy to the DMV manager. If the DMV is going to call the CHP to remove somebody, which it did- The DMV didn't call. The security guard called. No, the DMV- Well, the DMV had a security guard, a DMV manager, call the CHP to come that day, as they had done in the past. Well, somebody could have a permit and, you know, act out under their permit, correct? I'm sorry, I didn't hear you. There could have been a permit. They- I mean, they might even call if somebody had a permit because the person is not abiding by the terms of the permit. But they would have mentioned that. And this was a group- Did they mention no permit when they called? No, but it's the DMV and the CHP had a working relationship. The CHP issues the permit. So any time they want somebody removed, you should assume there's no permit? Yes, certainly, because- Any time they want somebody removed, for whatever reason, there's a fair assumption that gives you probable cause that those people they want removed don't have a permit. Yes, the CHP and the DMV had that kind of- Is there some evidence in the record of some kind of working relationship that shows that, you know, it's fair to rely on that assumption? Well, there is a declaration from the DMV manager that was appellant's excerpts of record, tab 11, the declaration of Nancy Villegas. She was the DMV manager at the time, and she discusses in her-or attests in her declaration that when the CHP issued a permit, she got a copy of it. This was how these things were done. Under the actual code section, 1860A, the department issuing the permit is the CHP. The Calvary Chapel Preaching Group was very familiar to the CHP officers, a distinctive and memorable group. They had responded to- At the time, was Officer Meyer involved with the licensing or the permit issuing process? He wasn't, but he worked in the office where they were issued. The call- He was not, but he worked there. Yes, he was. And then he did actually later go on after this event to become the permit officer. But at the time- Could he call his office and inquire, you know, any permits issued for this DMV office? Well, Your Honor, it was obvious to the CHP officers that this group had refused in the past to get a permit. Officers had gone out there, and this is in the record. There was another officer, Officer Donovan Walker, testified that he had gone out there previously and went through the whole permit process with this group. Their leader was very defiant. That's one of the reasons this group was so memorable to the CHP officers, a religious group who defies law enforcement. He said he made it clear there was no way he was going to get a permit. Is this probable cause determined on the basis of the information that the officer or a reasonable officer had at the time he made an arrest and not by later developed facts? But, Your Honor, these facts weren't developed later. These conversations occurred prior to the arrest. Well, I didn't know anything about that. Yes, he does, Your Honor. Where did he say that? He says in his declaration that he knew that Mackey did not have a permit. Conclusory, nothing to support it in his declaration anywhere. Officer Donovan Walker submitted a declaration attesting that he had a conversation with Officer Meyer and other officers prior to the date of arrest. The day before, now or before? No, no, no. It was before. The group was familiar. They had discussed it before, and he had specifically discussed the group leader, Brett Coronado's negative attitude and his unwillingness to get a permit. It's okay. Anybody in the group has the same negative attitude. That gives you probable cause. Officer Meyer thought he recognized Mr. Mackey from the previous warning he personally had given the group. And even if Mr. Mackey had not been there at the time, as his attorney says now, probable cause would still be present because that would be a reasonable mistake of identity. The group was familiar to Officer Meyer. He thought he recognized the guy from before. I don't know if it applies to this case, but I have to say in fairness, we do have cases that say an arresting or a searching officer is entitled to rely on, I don't want to say the totality of circumstances known to law enforcement, but information coming from other law enforcement officers, right, in making a decision on whether or not there's probable cause. Right. Not confined to his own or her own personal knowledge. Right. Those were available facts given to him at the time of arrest, the information he'd gotten from Officer Walker. The information he'd gotten. They were given to him at the time of the arrest? No, before. He had them before. The conversation. How did he get them? Just because he worked in the office? Yeah. The officers would talk about this group because the group was a problem. They were, you know, it was a distinctive memorial group. How do we deal with that? Did they talk about Mr. Mackey? They talked about the group. He belonged to Calvary Chapel. And they talked about the group leader who was actually arrested at the time. Was Mr. Mackey well known to everybody? Mr. Mackey was regular with this group. I think he was out there preaching with them almost every time they went out. So I think the officers would have recognized him. What about Mr. Tyler's point, that prior incident was over a year old? Well, there had been more than one prior incident, and the group actually went around to other government buildings in the locality, the local courthouse. The group was very familiar to the CHP. I mean, it was something they had discussed before, like, you know, what do you do with these guys? How many times are we going to give them a warning? They had gone over permit requirements with them. The group didn't want to get a permit. The DMV kept calling. So let me ask you, there are two other issues. I know. So you did raise qualified immunity.  The district court didn't get to because she found probable cause. Correct. So what would be the basis for? Well, we've pretty much gone over or tried to cover the first prong of qualified immunity. If you assume there was probable cause, you know, taking all the facts, why would the officer be entitled to qualified immunity? Well, unless an officer knowingly violates the law or is plainly incompetent, qualified immunity must apply. The U.S. Supreme Court has set clear standards now. Why should it apply here? Because it is not beyond debate that probable cause was not present. It was not obvious to any reasonable peace officer that Mr. Mackey should be allowed to yell at DMV customers standing in line or to gather there for his own activities without a permit at the time he was arrested. The district attorney agreed. He later charged Mr. Mackey for violating Section 1860A. A police expert testified in this case that the decision to arrest was reasonable as well. You know, qualified immunity is a strong defense. You have to either be knowingly violating the law, which it's clear from the MVARS that plaintiff submitted Officer Meyer wasn't doing that. Sometimes, even though it's ultimately a legal question, sometimes you can't really decide it until the critical facts are resolved. Well, Your Honor, Mr. Tyler, Mr. Mackey's attorney has argued with the evidence we have presented. They haven't presented evidence that refutes our evidence. So the MVARS doesn't refute that the officers had discussed the permit violation ahead of time, that the DMV had complained about this group in the past, that the facts available to the officers would show a reasonable officer that there was no permit. And whether or not Officer Meyer mentioned the permit or put it down as a basis for his citation is irrelevant under the U.S. Supreme Court authority. That's the Devon Peck decision. So one last major issue, and that is they did have state law claims. They did, yes. And under the state law, you know, presence is an absolute requirement. Well, that's in the Penal Code Section 836, but it's not – presence is not a requirement, Your Honor, for the immunity to apply. The immunity – State law claim doesn't have anything to do with immunity, right? I mean, the state law, qualified immunity has to do with federal constitutional. So I think the question now is what about the common law false arrest? I'm talking about a state law immunity. You're right, Your Honor. Oh, I'm sorry. No, that's okay. There's a qualified immunity. I'm not from California. I know. I know. Thank you, Your Honor. There's a qualified immunity for the 1983 claim, and California has a separate Penal Code immunity for false arrest state law claims. And California Penal Code Section 847B1 immunizes peace officers from liability. Give me that section again. Sure. It's Penal Code Section 847B1. It immunizes peace officers from liability for false arrest if the arrest was lawful or the peace officer at the time of arrest had reasonable cause to believe the arrest was lawful. So this is an objective standard. When evaluating that, though, you have to ask whether or not he – whether or not the crime took place in his presence. Well, according – And that's disputed here. Well, according to – well, he came – he did see the guy preaching in front of the line, and he did have facts that showed him – available to him that showed no permit. Under California law, the case is O'Toole v. Superior Court, 140 Caleb 4488. The question is whether a reasonable person would have a strong suspicion of the arrestee's guilt. So Section 847 and cases interpreting it, this immunity, do not require the officer to observe every element of every offense he charged, you know, personally or in his – you know, with his own senses. He did confirm with the security guard that the gentleman had been asked to leave when he arrived, and he did see Mr. Mackey preaching to the line when he got there. He did have facts available to him showing there was no permit. And as with the federal standard, the officer's subjective belief is irrelevant. This is a case interpreting the penal code immunity? Correct, yes. Okay. Yeah. All right. Let you go way over your time, so. I know. I saw that. I appreciate that. Thank you for your time, Your Honors. Thank you. You can have a minute or so for rebuttal. Thank you, Your Honor. I'll do my best to be very brief. First, I'm embarrassed to admit, but you are correct. The Fourth Amendment, of course you are, that presence is not required. No, no, no. A lot of law here. I was mistaken, and so that is correct. My reading of a U.S. Supreme Court case was in error. I want to just address a couple of things. Mr. Mackey stated in his declaration that the only time he had been there previously at the DMV was on this incident of December 24, 2009, and had not been there since from 2009 until this date of February 2nd at the time of the arrest in 2011. The state argues that there is more than one incident here. Well, certainly there is no evidence of any incident after December 9 up until the date of the arrest, and there's no evidence that Mr. Mackey was a regular of this group. There's no even definition of what this group is. No evidence that Mr. Mackey had a reputation of any kind. And there was testimony about a police expert. Yes, there was an expert that provided a declaration on behalf of the state. We had a declaration on behalf of our client. However, I don't believe that expert testimony is necessarily even relevant in the question of probable cause. Anything else? That's it, Your Honor. Thank you. Okay. Matter is submitted. Thank you, counsel. We appreciate your arguments this morning.
judges: Tashima, Paez, Friedman